

'08 CIV 6880

435-08/WLJ/JPG
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
ALLIED CHEMICAL CARRIERS LLC
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
William L. Juska (WJ 0772)
Jan P. Gisholt (JG 3768)

LLORCA & HAHN LLP (co-counsel for Plaintiff)
8 Watering Lane
Norwalk, CT 06850-4418
(203) 642-7321
Manuel R. Llorca (ML 4034)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

ALLIED CHEMICAL CARRIERS LLC,

               Plaintiff,

      -against-

NATIONAL BIOFUELS L.P. d/b/a
NATIONAL BIOFUELS L.L.P. d/b/a
NATIONAL BIOFUELS L.L.C.,
                   Defendant.

----------------------------------------------------------X

08 Civ.

**VERIFIED COMPLAINT**

Plaintiff ALLIED CHEMICAL CARRIERS LLC (hereinafter "ALLIED"), by its
attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against Defendants
NATIONAL BIOFUELS L.P. d/b/a NATIONAL BIOFUELS L.L.P. d/b/a NATIONAL
BIOFUELS L.L.C. (hereinafter "NATIONAL BIOFUELS") allege upon information and belief
as follows:

    1.   This is an admiralty and maritime claim within the meaning of Rule 9(h) of the
Federal Rules of Civil Procedure in that it involves a claim for the breaches of maritime contracts

NYDOCS1/309742.1

of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333. Jurisdiction is also proper pursuant to the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action arises under the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.    At all times relevant hereto, Plaintiff ALLIED was and still is a foreign corporation organized and existing under and by virtue of the laws of the Republic of Liberia.

3.    At all times relevant hereto Defendant NATIONAL BIOFUELS was and is a domestic partnership organized and existing under and by virtue of the laws of Texas with a place of business at 5120 Woodway, Suite 10010, Houston, Texas 77056, and a place of business c/o Fulcrum Power Services, LLC /Fulcrum Energy LLC, 5120 Woodway, Suite 10010, Houston, Texas 77056.

4.    Plaintiff, as Owner of the FAIRCHEM COLT, entered into a charter party dated January 11, 2007 with Defendant, NATIONAL BIOFUELS as Charterer. The charter party contained an arbitration clause providing for "arbitration to be in New York governed by U.S. law."

5.    Plaintiff, as Owner of the FAIRCHEM STEED, entered into a subsequent charter party dated March 28, 2007 with Defendant NATIONAL BIOFUELS as Charterer. The charter party contained an arbitration clause providing for "arbitration to be in New York governed by U.S. law."

6.    Disputes arose due to charterer NATIONAL BIOFUELS' nonpayment to ALLIED of demurrage, extra berth charges, and other expenses invoiced but unpaid in the total amount of $11,975.60 for the January 11, 2007 charter party regarding the FAIRCHEM COLT and $94,750.71 for the March 28, 2007 charter party regarding the FAIRCHEM STEED.

7.      On or about September 18, 2007, Plaintiff ALLIED made formal demands upon Defendant NATIONAL BIOFUELS for arbitration under each of the charter parties, with advice regarding Plaintiff's appointment of its arbitrator in each case; a demand that Defendant appoint its arbitrator in each case; and a request that the two matters be consolidated into one arbitration.

8.      No response was received from Defendant, and on October 10, 2007 an arbitrator was appointed in each case on behalf of NATIONAL BIOFUELS by Plaintiff, pursuant to the terms of the charter party arbitration clause, with notice and copy to Defendant. On October 12, 2007 the third arbitrator in each case was appointed as chairman by the first two arbitrators, with notice and copy to Defendant. Plaintiff's submission on the merits was presented to the Panel on January 4, 2008, with notice and copy to Defendant.

9.      Despite requests by the arbitration Panel to Defendant, no submission was made by Defendant to the Panel, and no funds for costs were deposited by Defendant into the escrow account of the Society of Maritime Arbitrators as requested by the Panel on February 22, 2008. Plaintiff placed the $6,000.00 requested by the Panel in the escrow account on February 28, 2008.

10.     On April 30, 2008 after a number of unanswered notices and communications to Defendant, the Panel rendered their Final Arbitration Awards in the two arbitrations, finding that the Plaintiff was entitled to a total of $107,623.97, including interest through the date of the award and the full costs of the arbitration and an allowance for attorneys fees in the FAIRCHEM STEED arbitration; and the Panel also found that Defendant should further be liable for ongoing interest at the rate of 5.25% per annum from the date of the award until it was paid. A copy of the award is attached as Exhibit A hereto. The award was sent to Defendant by the Panel.

11.    On April 30, 2008 the Panel found in the FAIRCHEM COLT arbitration that the Plaintiff was entitled to a total of $16,842.59 including interest through the date of the award, and an allowance toward its legal fees and the full costs of the arbitration, up to the date of the award. The Panel also awarded interest at the rate of 5.25% per annum from the date of the award until it is paid. A copy of this award is attached as Exhibit B hereto. The award was sent to the Defendant by the Panel.

12.    No response was made by Defendant to the Panel's awards and there have been no attempts to challenge the awards.

13.    On June 11, 2008, co-counsel LLORCA & HAHN LLP filed, on behalf of ALLIED, a Petition to Confirm the aforementioned arbitration awards under docket number 08-Civ.-05376 (LTS).

14.    Defendant NATIONAL BIOFUELS has not appeared to contest the Petition to Confirm the Award(s) which is now pending in the Southern District of New York.

15.    ALLIED satisfied all of its obligations under the charters with NATIONAL BIOFUELS.

16.    To-date no payment of any amounts awarded has been received.

17.    Plaintiff, has been granted the aforesaid awards against Defendant as follows:

| | |
|---|---|
| FAIRCHEM STEED Demurrage (Net) | $ 84,750.71 |
| FAIRCHEM STEED Interest on Demurrage | $  4,902.58 |
| FAIRCHEM STEED Second berth charge | $ 10,000.00 |
| FAIRCHEM STEED Interest on berth charge | $     695.68 |
| FAIRCHEM STEED Arbitrators' fees | $  3,775.00 |
| FAIRCHEM STEED Allowance for legal fees and costs | $  3,500.00 |

| | |
|---|---|
| FAIRCHEM STEED interest on $107,623.97 from date of award (4/30/08) to July 31, 2008 at 5.25% | $    1,397.04 |
| **FAIRCHEM STEED  Total** | **$109,021.01** |
| FAIRCHEM COLT Demurrage | $    9,039.02 |
| FAIRCHEM COLT Interest | $       628.57 |
| FAIRCHEM COLT Arbitrators' fees | $    3,675.00 |
| FAIRCHEM COLT Allowance for legal fees and costs | $    3,500.00 |
| FAIRCHEM COLT Interest on $16,842.59 from date of award (4/30/08) to July 31, 2008 at 5.25% | $       218.63 |
| **FAIRCHEM COLT Total** | **$  17,061.22** |
| **Total** | **$126,082.23** |

18.      In all, NATIONAL BIOFUELS owes ALLIED for damages for breach of Charter in the sum of **$126,082.23**, no part of which has been paid, though duly demanded.

19.      This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for ALLIED's claims awarded in arbitration in New York, NY as agreed by the parties.

20.      Upon information and belief, and after investigation, Defendant NATIONAL BIOFUELS cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due to, from, or for the benefit of Defendant NATIONAL BIOFUELS (hereinafter, "ASSETS"),

including but not limited to "ASSETS" at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

**WHEREFORE**, Plaintiff ALLIED prays:

a.   That process in due form of law according to the practice of this Court issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it in the principal amount of **$126,082.23** plus interest, costs and attorneys fees;

b.   That since Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant, up to and including the sum of **$126,082.23,** be restrained and attached, including but not limited to any cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or any other property of, belonging to, due to, from, or for the benefit of Defendant (collectively "ASSETS"), including but not limited to such "ASSETS" as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c.   That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and,

d.     For such other, further and different relief as this Court may deem just and proper

in the premises.

Dated: New York, New York
       July 31, 2008

> FREEHILL HOGAN & MAHAR, LLP
> Attorneys for Plaintiff
> ALLIED CHEMICAL CARRIERS LLC

By:     _____

> William L. Juska (WJ 0772)
> Jan P. Gisholt (JG 3768)
> 80 Pine Street
> New York, NY 10005
> (212) 425-1900
> (212) 425-1901 fax
>
> LLORCA & HAHN LLP (co-counsel)
> 8 Watering Lane
> Norwalk, CT 06850-4418
> (203) 642-7321
> Manuel R. Llorca (ML 4034)

### ATTORNEY VERIFICATION

State of New York   )
                   ) ss.:
County of New York  )

      WILLIAM L. JUSKA, being duly sworn, deposes and says as follows:

      1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

      2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

      3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

 

                            _____
                                   William L. Juska

Sworn to before me this
31st day of July, 2008

_____
Notary Public

GLORIA J. REGIS HOSEIN
Notary Public, State of New York
No. 01RE6065625, Qualified in Kings County
Certificate Filed in New York County
Commission Expires October 22, 2009

# EXHIBIT A

In the Matter of the Arbitration

between

Allied Chemical Carriers  LLC
Claimant and Disponent Owner of the
**M/T FAIRCHEM STEED**

- and -

National Biofuels LLP
Respondent and Charterer

Under an ASBATANKVOY Form of
Tanker Voyage Charter Party
dated March 28, 2007

**Decision and Final Award
April 30, 2008**

Before:
Austin L. Dooley, Ph.D.
A. J. Siciliano
Gerard T. Desmond, Chair

Appearances:
For Allied Chemical Carriers LLC
Llorca & Hahn LLP
By: Manuel R. Llorca

For National Biofuels LLC
No Appearance

1

## BACKGROUND

The arbitration disputes arise out of a tanker charter party on an ASBATANKVOY Form dated March 28, 2007 (hereinafter "Charter") between Allied Chemical Carriers, LLC (hereinafter "Owner"), disponent owner of the M/T FAIRCHEM STEED (hereinafter "Vessel") and National Biofuels LLP (hereinafter "Charterer"). The parties' agreement called for the Vessel to lift a part cargo of minimum 8,000 mt/ maximum 11,000 mt (later amended to permit Charterer to load up to 12,500 mt) 5% moloo of fatty methyl ester from Los Angeles/Long Beach to one safe berth Amsterdam/Rotterdam/Antwerp[1]. The charter was memorialized in a post fixture recap between brokers; no formal charter party was drawn up or signed.

The Vessel timely arrived at Los Angeles and presented her Notice of Readiness (NOR) on April 14, 2007 at 1248 hours. The Vessel berthed at West Way Terminal (LA-70) on April 15, 2007 at 0112 hours and commenced loading at 0430 hours the same day. The loading was completed at 1555 hours on April 17, 2007 and hoses were disconnected at 1730 hours the same day.

Shortly after the Vessel departed Los Angeles for Amsterdam, the parties agreed to amend the fixture to include Rotterdam as a second discharge port with discharge to take place at two separate berths. Whatever additional compensation was agreed to call Rotterdam was apparently paid, because Owner has only made claim in this proceeding for the $10,000.00 accepted by Charterer for the two berth discharge.

The Vessel arrived at Amsterdam and presented her Notice of Readiness on May 13, 2007 at 0400 hours. The Vessel berthed at Westway, berth 4 at May 14, 2007 at 2335 hours. The Notice of Readiness was accepted on May 15, 2007 at 0100 hours. Discharging commenced on May 15, 2007 at 0125 hours and was completed at 0718 hours on the same day. Hoses were disconnected at 0800 hours on May 15, 2007.

---

[1] The documents indicate that although the Master nominated the maximum cargo of 13,125 mt, only 11,395.014 mt were actually loaded. However, Owner calculated allowed laytime as though the full 13,125 mt had been loaded and made no claim for deadfreight in this proceeding.

The Vessel then proceeded to Rotterdam, where she arrived at 2042 hours on May 18, 2007 and presented her Notice of Readiness. The Notice of Readiness was accepted at 0054 hours on April 19, 2007. The Vessel berthed at Vopak Vlaardingen on May 19, 2007 at 0054 hours. Discharge began at 0318 hours on May 19, 2007 and was completed at 0130 hours on May 20, 2007. The hoses were disconnected at 0230 hours on May 20, 2007.

The Vessel shifted to her second berth in Rotterdam, Koole Pernis, where she berthed at 0442 hours on May 20, 2007. She presented her Notice of Readiness at 0230 hours on the same date. The Vessel commenced discharging on May 20, 2007 at 0630 hours and completed discharge of all parcels at 2040 hours on May 21, 2007.   Hoses were disconnected later that evening at 2130 hours.

On June 6, 2007, Owner submitted its invoice to Charterer for demurrage at load and discharge for $85,823.50 less 1.25% address commission, leaving a claimed net balance due of $84,750.71

Owner had previously submitted its invoice to Charterer for the extra berth in Rotterdam in the amount of $10,000.00.

## THE CLAIMS

Owner claims $84,750.71 for net demurrage and $10,000.00 for the extra berth in Rotterdam plus interest, the cost of this arbitration and attorney fees. Charterer has not remitted the claimed amounts nor responded to Owner's submission in this Arbitration.

## THE PROCEEDINGS

Owner demanded arbitration under Clause 15 of the fixture note, and appointed A.J. Siciliano. When Charterer failed to respond, Owner then appointed Austin L. Dooley, and the two thus chosen arbitrators then selected Gerard T. Desmond to serve as third arbitrator and panel Chair. No formal hearings were held. Instead, the matter proceeded solely on written submission. Although twice urged by the Chair to do so, Charterer

3

chose not to participate in this proceeding or otherwise respond to the claims made by Owner. On January 29, 2008, the Chair declared the evidentiary phase of the proceeding closed to further submissions.

## DISCUSSIONS AND DECISIONS

Owner's demurrage claim was accompanied by laytime calculations, time sheets, Notice of Readiness and Statement of Facts for the load and both discharge ports, letters of protests for slow loading and discharge delays, letter of protest due to short loading, letter of protest for discrepancies between shore and ship figures for the three parcels, hourly pumping logs, and vessel ullage/sounding and capacity report, empty tank reports and dry tank certificates.

Owner's claim for second berth compensation was accompanied by Charterer's acknowledgement of responsibility for payment of the $10,000.

After careful review, we agree that Owner's demurrage and second berth discharge at Rotterdam claims are properly supported.  Charterer has been allowed laytime based upon the Master's cargo nomination of 13,125 mt.

Owner's submission demonstrates it complied with the charter party requirement to present its demurrage invoice along with the required documentation within 90 days from completion of discharge. Indeed not only did Owner timely submit the demurrage claim to Charterer's representative by FedEx on June 6, 2007 but Charterer's representative confirmed the claim was duly passed on to the Charterer that same day.  Additionally, Charterer's representative confirms the Extra Berth Charge invoice was received and sent to Charterer on May 16, 2007. Charterer did not respond to either presentation nor the follow up notices subsequently sent on August 10, 2007.

The panel concludes that the Owner is entitled to net demurrage of $84,750.71 plus interest of $4,902.58 equal to 7.0853% per annum (the weighted average rate based upon the Federal Reserve Daily Bank Prime Commercial loan rate) from July 6, 2007 through the date of this award.

Additionally the panel has seen persuasive evidence of Charterer's post fixtue agreement to accept responsibility for the second Rotterdam discharge berth charge of $10,000.00. Accordingly, we find that Owner is entitled to the second berth charge of $10,000.00 plus interest of $695.68 equal to 7.2550% per annum (the weighted average rate based upon the Federal Reserve Daily Bank Prim Commercial loan rate) from May 16, 2007 until the date of this award.

The panel also grants Owner an allowance of $3,500.00 toward its legal fees and costs.

## ARBITRATORS' FEES

The panel's total fees and expenses amounting to $3,775.00 are assessed in full against Charterer. The individual arbitrators' fees are set forth in the attached Appendix A, which forms a part of this award. Although those fees are the joint and several obligation of both parties, Owner is to pay the fees in the first instance in part from the escrow account established for this purpose with the Society of Maritime Arbitrators, and the shortfall balances in fresh funds to each of the arbitrators. Once paid, Owner shall become entitled to a further claim-over against Charterer for the full amount of the arbitrator's fees and expenses which we have included in the award.

5

In the Matter of the Arbitration

between

Allied Chemical Carriers, LLC
Claimant and Disponent Owner of the
**M/T FAIRCHEM STEED**

- and -

National Biofuels LLP
Respondent and Charterer

Under an ASBATANKVOY Form of
Tanker Voyage Charter Party
dated March 28, 2007

## APPENDIX A

The panel's total fees and expenses totaling $3,775.00 are assessed in full against the Charterer. Nevertheless, Owner, in the first instance, is to pay the sums shown due to each individual arbitrator. Payment is to be made in part from the escrow account established for this purpose with the Society of Maritime Arbitrators and the shortfall balances in fresh funds to each of the balances to each of the arbitrators. Once paid, Owner shall succeed to a further claim-over against Charterer for the full amount of the arbitrator's fees and expenses, which we have included in this award. The fees and expenses remain the joint and several obligation of both parties.

| | |
|---|---|
| Austin L. Dooley, Ph.D. | $ 1,100.00 |
| A.J. Siciliano | $ 1,175.00 |
| Gerard T. Desmond | $ 1,500.00 |

New York
April 30, 2008

7

**THE AWARD**

We hereby direct the Charterer to remit to Owner the sum of $107,623.97 within 30 days of the date of this award, failing which interest shall accrue from the date hereof at the rate of 5.25% per annum, (Federal Reserve Bank Daily Bank Prime Commercial Loan Rate) until such time as the full amount has been made or this award is reduced to judgment. We arrive at this amount as follows:

| | | |
|---|---|---|
| Demurrage (Net) | $ | 84,750.71 |
| Interest on Demurrage | $ | 4,902.58 |
| Second berth charge | $ | 10,000.00 |
| Interest on second berth charge | $ | 695.68 |
| Arbitrators' fees | $ | 3,775.00 |
| Allowance for legal fees and costs | $ | 3,500.00 |
| Total | | $107,623.97 |

This Final Award may be enforced by a court of competent jurisdiction.


_____
Austin L. Dooley, Ph.D.


_____
A.J. Siciliano


_____
Gerard T. Desmond, Chair


New York
April 30, 2008

6

# EXHIBIT B

**In the Matter of the Arbitration**

between

Allied Chemical Carriers LLC
Claimant and Disponent Owner of the
**M/T FAIRCHEM COLT**

- and -

National Biofuels LLP
Respondent and Charterer

Under an ASBATANKVOY Form of
Tanker Voyage Charter Party
dated January 11, 2007

**Decision and Final Award
April 30, 2008**

Before:
Austin L. Dooley, Ph.D.
A. J. Siciliano
Gerard T. Desmond, Chair

Appearances:
For  Allied Chemical Carriers LLC
Llorca & Hanh LLP
By: Manuel R. Llorca

For National Biofuels LLP
No Appearance

## BACKGROUND

 This arbitration dispute arises out of a tanker charter party on the ASBATANKVOY Form dated January 11, 2007,  between Allied Chemical Carriers LLC (hereinafter "Owner"), disponent owner of the M/T FAIRCHEM COLT (hereinafter "Vessel") and National Biofuels LLP (hereinafter "Charterer"). The parties' agreement called for the Vessel to lift and carry a part cargo of minimum 10,000 mt/maximum 13,000 mt[1] of fatty acid methyl ester from Los Angeles/Long Beach, California to Rotterdam.  The charter fixture was memorialized in a post fixture recap between brokers; no formal charter party was drawn up or signed.

The Vessel timely arrived in Los Angeles and tendered her Notice of Readiness (NOR) on February 11, 2007 at 1906 hours. The Vessel berthed at West Way Terminal (LA-70) on February 12, 2007 at 0715 hours, and commenced loading later that morning at 0920 hours. The loading was completed at 0945 hours on February 13, 2007 and hoses were disconnected 1030 hours on the same day.

The Vessel arrived in Rotterdam and tendered NOR at 2148 hours March 24, 2007 at Berth Buoy 61 Petroleumhaven. The NOR was accepted 0830 hours on March 26, 2007. Discharge into barges began 1218 hours on March 26, 2007, and was completed 0542 hours on March 27, 2007.   Hoses to the last cargo barges were disconnected at 0618 hours on the same date.

On April 10, 2007, Owner submitted its invoice to Charterer for demurrage at load and discharge for $11,975.60 less 1.25% address commission, leaving a claimed net balance due of $11,825.90.

---

[1]  The documents indicate that although the Master nominated the minimum cargo of 10,000mt, only 3,688.48 mt were actually loaded at Los Angeles. However, Owner calculated allowed laytime as though 10,000 mt had been loaded  and presented no claim for deadfreight in this proceeding.

2

## THE CLAIMS

Owner claims net demurrage of $11,825.90 plus interest, the costs of this arbitration and attorney fees. Charterer has not remitted the claimed amount nor responded to Owner's submissions in this arbitration.

## THE PROCEEDINGS

Owner demanded arbitration under Clause 15 of the fixture note, and appointed A.J. Siciliano. When Charterer failed to respond, Owner then appointed Austin L. Dooley, and the two thus chosen arbitrators then selected Gerard T. Desmond to serve as third arbitrator and panel Chair. No formal hearings were held. Instead, the matter proceeded solely on written submission. Although twice urged by the Chair to do so, Charterer chose not to participate or otherwise respond to the demurrage claimed by Owner. On January 29, 2008, the Chair declared the evidentiary phase of the proceeding closed to further submissions.

## DISCUSSION AND DECISION

Owner's demurrage claim was accompanied by demurrage calculations, time sheets, Notices of Readiness and Statement of Facts for both load and discharge ports, letters of protest for slow loading and discharge delays, hourly pumping logs, and Vessel ullage/sounding and capacity report and empty tank reports.

Except as hereinafter discussed, we agree the documents presented generally support the Owner's demurrage claim. The Charterer was correctly allowed laytime of 66 hours and 40 minutes within which to load and discharge the cargo (reversible laytime). However, we have difficulty with Owner's counting the time during which the Vessel was engaged in discharging "prewash" slops into the AQUA SCALDIS, a designated slop barge. That operation only took place after discharge of the cargo had been completed and hoses to the cargo barge SICHEM MANILA were disconnected. Absent evidence that discharge of the "prewash" slops was mandatory or specially agreed to count, rather than laytime, we view that period as time used to prepare the Vessel for her next cargo. Accordingly, instead of the used laytime of 78 hours and 24 minutes calculated by Owner, we find

3

Charterer only used a total of 75 hours and 38 minutes.  After deducting allowed laytime of 66 hours, 40 minutes, we conclude the gross demurrage incurred amounted to 8 hours, 58 minutes at $24,500 per day/pro rata, or $9,153.45, less 1.25% address commission or a net due Owner of $9,039.02.

Owner's submissions demonstrate it complied with the charter party requirement to present its demurrage invoice along with the required documentation within 90 days from completion of discharge.  Indeed, not only did Owner timely submit the demurrage claim to Charterer's representative by FedEx on April 10, 2007, but Charterer's representative confirmed the claim was duly passed on to the Charterer on April 12, 2007.  Charterer did not respond to that presentation nor to the follow up notice which Owner subsequently sent on August 10, 2007.

The panel concludes that Owner is entitled to the net demurrage of $9,039.02, plus interest of $628.57 equal to 7.25 % per annum (the weighted average rate based upon the Federal Reserve Bank Daily Bank Prime Commercial Loan Rate) from May 15, 2007 through the date of this award. and an allowance of $3,500 towards its legal fees and costs.

## ARBITRATORS' FEES

The panel's total fees and expenses amounting to $3,675.00 are assessed in full against Charterer.  The individual arbitrator's fees are set forth in the attached Appendix A, which forms a part of this award.  Although those fees are the joint and several obligation of both parties, Owner is to pay the fees in the first instance from the escrow account established for this purpose with the Society of Maritime Arbitrators.  Once paid, Owner shall become entitled to a further claim-over against Charterer for the full amount of the arbitrator's fees and expenses which we have included in the award.

**In the Matter of the Arbitration**

between

Allied Chemical Carriers LLC
Claimant and Disponent Owner of the
**M/T FAIRCHEM COLT**

- and -

National Biofuels LLP
Respondent and Charterer

Under an ASBATANKVOY Form of
Tanker Voyage Charter Party
dated January 11, 2007

## APPENDIX A

The panel's total fees and expenses totaling $3,675.00 are assessed in full against Charterer. Nevertheless, Owner, in the first instance, is to pay the sums shown due to each individual arbitrator . Payment is to be made from the escrow account established for this purpose with the Society of Maritime Arbitrators. Once paid, Owner shall succeed to a further claim-over against Charterer for the full amount of the arbitrator's fees and expenses, which we have included in the award. The fees and expenses remain the joint and several obligation of both parties.

| | |
|---|---|
| Austin L. Dooley | $1,050.00 |
| A. J. Siciliano | $1,125.00 |
| Gerard T. Desmond | $1,500.00 |

New York, New York
April 30, 2008

6

## THE AWARD

We hereby direct the Charterer to pay to Owner the sum of $16,842.59 within 30 days of the date of this award, failing which interest shall accrue from the date hereof at the rate of 5.25 % per annum (Federal Reserve Bank Daily Bank Prime Commercial Loan Rate) until such time as the full amount has been made or this award is reduced to judgment. We arrive at this amount as follows:

| | |
|---|---:|
| Demurrage | $9,039.02 |
| Interest | $628.57 |
| Arbitrators' fees | $3,675.00 |
| Allowance for Legal Fees and Costs | $3,500.00 |
| TOTAL DUE OWNER | $16,842.59 |

This Final Award may be enforced by a court of competent jurisdiction.

Austin L. Dooley, Ph.D.

A. J. Siciliano

Gerard T. Desmond, Chair

New York, New York
April 30, 2008